THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES HARRIS, Defendant-Appellant.

First District (4th Division)   No. 1—06—3509

Opinion filed August 20, 2009.—Rehearing denied September 9, 2009.

Michael J. Pelletier, Patricia Unsinn, and Holly J.K. Schroetlin, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Miles J. Keleher, and Ugo H. Buzzi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a bench trial, defendant James Harris was convicted of false personation of an attorney for rendering a trademark opinion while he knowingly lacked the authority to practice law. He was sentenced to one year of probation and 100 hours of community service. On appeal, Harris's main argument is that the State failed to present sufficient evidence to support his conviction. For the reasons set forth below, we affirm.

## BACKGROUND

On November 10, 2003, Robert J. Dale, owner of an advertising firm in Chicago, wrote a letter to James Harris and retained Harris's services as a patent attorney to provide a legal opinion on a trademark matter. Harris, a law school graduate since 1974, replied to Dale's letter with a three-page legal opinion on the trademark issue, listing himself in the opinion's letterhead as an "Attorney at Law" and "Patent Attorney." Harris signed the letter as "James M. Harris, Patent Attorney" and attached an invoice for the legal work performed and the preparation and filing of a service mark application with the United States Patent and Trademark Office (USPTO). Harris collected $11,005.70 for this work.

The State charged Harris with false personation of an attorney under section 32—5 of the Criminal Code of 1961 (720 ILCS 5/32—5 (West 2002)). The parties stipulated that Harry I. Moatz, the director of enrollment and discipline at the USPTO, would testify that Harris had been admitted to the patent bar until 1990, when his name was removed from the roster of registered patent attorneys and patent agents. The USPTO removed Harris from the roster because he failed to provide the USPTO with a current address and did not respond to a letter meant to ascertain whether he intended to remain on the register of patent attorneys.

At trial, Joan Kreutzman, the member records clerk for the State Bar of Michigan, testified that Harris was suspended from the Michigan bar in February 2003 for not paying his attorney registration fees. Kreutzman testified that an attorney in Michigan receives one letter informing him that he is late in paying fees; if no response is received in 30 days, the attorney is suspended. Harris argued that he never received the letter. Kreutzman's testimony further established that since 1993, Harris had failed to pay his fees on time on multiple occasions and had been reinstated to the bar after paying the past-due amounts.

Harris's bar admission in two additional jurisdictions came into question at trial. Paul Lambert, an investigator with the Cook County State's Attorney's office, testified that when he interviewed Harris, Harris stated that he "belonged to the Texas bar and Michigan bar and U.S. patent bar, but not the Illinois bar." The circuit court found Harris guilty of false personation of an attorney and sentenced him to one year of probation and 100 hours of community service.

## ANALYSIS

On appeal, Harris raises the following issues: (1) whether the State's evidence regarding the four jurisdictions in question was sufficient to support a conviction of false personation of an attorney; (2) whether the State failed to disprove the exception in the statute; (3) whether the legislature intended the false personation of an attorney statute to include a jurisdictional limit; (4) whether the statute is unconstitutionally vague if interpreted with a jurisdictional limit; and (5) whether the indictment sufficiently charged the offense.

### I. Statutory Analysis

The false personation of an attorney statute states: "A person who falsely represents himself or herself to be an attorney authorized to practice law for purposes of compensation or consideration commits a Class 4 felony. This subsection (a) does not apply to a person who unintentionally fails to pay attorney registration fees established by Supreme Court Rule." 720 ILCS 5/32—5(a) (West 2002).

We first address Harris's contention that the statute's language does not include a jurisdictional limit. He argues that because the statute does not specify that he must be authorized to practice law in Illinois, he did not violate the law if he was licensed in any one state or jurisdiction.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Cordell*, 223 Ill. 2d 380, 389, 860 N.E.2d 323, 330 (2006). The best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Cordell*, 223 Ill. 2d at 389, 860 N.E.2d at 330. Here, the legislature's intent not to include a jurisdictional limit can be seen by comparing the 2002 statute with an earlier version of the statute, which stated:

> "[A]ny person residing *in this state* not being regularly licensed to practice law *in the courts of this state*, who shall in any manner hold himself out as an attorney at law or solicitor in chancery or represent himself verbally or in writing, directly or indirectly, as authorized to practice law, shall be deemed guilty of a misdemeanor." (Emphasis added.) Ill. Rev. Stat. 1953, ch. 38, par. 298.

See also *People v. Hubbard*, 313 Ill. 346, 349, 145 N.E. 93, 94 (1924) (referring to same wording of statute).

■ The legislature's placement of a jurisdictional limit in the earlier version of the statute is in contrast to the legislature's silence on the jurisdictional issue in the 2003 statute. The difference between the versions suggests a conscious variation in the legislature's intent; therefore, we presume that in drafting this statute, the legislature was aware of this variation in the language of the two versions and that this variation was intentional. See, *e.g., In re W.J.*, 284 Ill. App. 3d 203, 208, 672 N.E.2d 778, 781 (1996). The current statute indicates the legislature's intent to exclude authorized attorneys from other jurisdictions from the statute's reach. As such, we agree with Harris's interpretation of the statute and therefore do not address his alternative argument regarding the statute's constitutionality when it is read with a jurisdictional limit.

In arguing that the statute should be construed without jurisdictional limits, Harris further contends that the statute does not apply to law school graduates with legal experience. Harris asserts that law school graduates have legal training and thus are not falsely representing themselves as attorneys. Although Harris correctly points out that one purpose of the statute is to protect the public and the courts from misrepresentations and fraud by laypersons without legal skill or knowledge of court procedures, that is not the statute's sole purpose. See *Chicago Bar Ass'n v. Kellogg*, 338 Ill. App. 618, 634, 88 N.E.2d 519, 526 (1949). A plain reading of the statute shows that it is also meant to reach people like Harris, who are trained attorneys falsely representing their authority to practice law for the purposes of compensation. See 720 ILCS 5/32—5(a) (West 2002). The exception to the statute reveals the legislature's intent to have the statute reach both laypersons and trained attorneys because it excludes individuals who unintentionally fail to pay their attorney registration fees. 720 ILCS 5/32—5(a) (West 2002). By choosing to exclude only those attorneys who unintentionally fail to pay their fees, the legislature included those attorneys who intentionally fail to pay registration fees. Therefore, we interpret the statute without jurisdictional limits; thus, a person who is properly authorized to practice law in some jurisdiction would not violate the statute.

## II. Elements of the Offense

■ We next address whether the State's evidence was sufficient to convict Harris of false personation of an attorney. The State was required to establish that: (1) Harris represented that he was an attorney authorized to practice law for the purposes of compensation or

consideration; (2) Harris's representation was false, meaning he did not have the authority to practice the type of law he represented or did not have the authority to practice law in the jurisdiction he represented; and (3) Harris knew his representation was false. See 720 ILCS 5/32—5(a) (West 2002).

Harris contends that the State failed to present sufficient evidence to support his conviction. When reviewing the sufficiency of the evidence of a criminal conviction, this court's role is not to retry the defendant but, rather, to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Ward*, 215 Ill. 2d 317, 322, 830 N.E.2d 556, 558-59 (2005).

Harris rendered a legal opinion on a trademark issue; therefore, the State had the burden of proving that Harris lacked the authorization to practice trademark law before the USPTO.[1] However, we have interpreted the statute to mean that Harris only must be an attorney authorized to practice law in some jurisdiction. Thus, we will consider whether the State provided sufficient evidence to prove that Harris knowingly practiced law without authorization from any jurisdiction.

The State proved the first element of the offense with regard to Harris's representation of his authority to practice. The record shows that Harris represented himself to Dale as an authorized patent attorney who could perform legal services for compensation. The letterhead Harris used to communicate with Dale stated, "Attorney at Law" and "Patent Attorney." Also, Harris signed the opinion as "James M. Harris, Patent Attorney." Finally, Harris attached an invoice to his legal opinion and was paid for his work.

The State also proved beyond a reasonable doubt that Harris lacked the authority to practice before the USPTO. The parties stipulated that Harris was a member of the patent bar until 1990, when he was removed from the roster of registered patent attorneys pursuant to section 10.11(b) of title 37 of the Code of Federal Regulations (37 C.F.R. §10.11(b) (2003)). Thus, the State proved that Harris was not authorized to practice law before the patent bar.

---

[1]Harris contends that the State argues for the first time on appeal that he violated the statute by filing a service mark with the USPTO. We reject Harris's contention because the State's main theory at trial was that Harris practiced law before the USPTO without authorization; therefore, the State has not raised a new line of prosecution on appeal.

We reject Harris's argument that no evidence established that he actually practiced law in writing the letter to Dale. The practice of law includes the giving of advice or the rendition of any service requiring the use of any degree of legal knowledge or skill. *Lozoff v. Shore Heights, Ltd.*, 35 Ill. App. 3d 697, 700, 342 N.E.2d 475, 478 (1976). Here, the record shows that Harris rendered a legal opinion on a trademark issue while holding himself out as a patent attorney. This is a representation that he was authorized to practice law.

As to the third element, the State proved that Harris knew his representation was false. Knowledge is the appropriate mental state for this element, and knowledge involves the awareness of the substantial probability of the existence of facts making a person's conduct unlawful. See *People v. Abdul-Mutakabbir*, 295 Ill. App. 3d 558, 565, 692 N.E.2d 756, 761 (1998); 720 ILCS 5/4—5(a) (West 1996). Harris contends that the State merely presented a series of inferences which, when combined, failed to meet the knowledge element of this offense. Moreover, Harris argues that he expected to remain on the USPTO register until he informed the office that he no longer wished to be included.

The State responds that as a patent attorney, Harris had a duty to give the USPTO a valid address at which he could be contacted to determine if he wished to remain on the register. Therefore, Harris had the dual burden of keeping the USPTO up to date with a valid address for correspondence and informing the office that he wished to remain on the register. Because Harris failed to provide the USPTO with a valid address in 1990 and did not communicate with the office for 13 years, he was aware of the substantial probability that he would be removed from the register of patent attorneys because he did not receive correspondence from the USPTO and did not reply to its letter. Therefore, the evidence was sufficient to show that Harris knowingly practiced law without authority from the USPTO.

Our reading of the statute only requires Harris to have authorization to practice law from some jurisdiction to avoid conviction for falsely presenting himself as an attorney. Thus, we must decide whether the evidence established that Harris was authorized in any one of the other three jurisdictions in question: Michigan, Texas and Illinois.

The State presented sufficient evidence to prove that Harris knowingly practiced law without authorization from the Michigan bar. Kreutzman, the member records clerk for the State Bar of Michigan, testified that Harris was suspended from the Michigan bar at the time he drafted the legal opinion in November 2003.

Harris responds, however, that he did not know of his Michigan suspension. He points out that, according to Kreutzman's testimony, suspension automatically occurs within a month of the due date for fees. Harris further argues that although attorneys are sent a letter informing them of the late fee before they are suspended, the State did not establish that the Michigan bar sent a letter to him or that he received this letter.

Harris's argument is without merit. The testimony established that Harris was chronically late in paying his Michigan attorney registration fees. Harris's pattern of late payment supports a conclusion that he knew he would be suspended from the Michigan bar. Therefore, the State established that Harris had knowledge of his suspension from the Michigan bar and thus provided sufficient evidence that he knowingly practiced law without authorization from the Michigan bar.

Harris next argues that the State failed to prove beyond a reasonable doubt that he lacked authorization to practice law from the Texas and Illinois bars. These two jurisdictions are only in question because of the testimony of Lambert, the investigator from the Cook County State's Attorney's office, that "Mr. Harris told me that he belonged to the Texas bar and Michigan bar and U.S. patent bar, but not the Illinois bar." Based on Lambert's statement, Harris argues that the State was required to prove that he was not a member of the Texas and Illinois bars.

Although the State did not present evidence rebutting Harris's statement that he was admitted to practice in Texas, Harris never offered his proposed Texas bar membership as a defense. The record indicates that Harris did not present this statement as a defense; the State presented this statement as evidence against Harris at trial. Harris's reliance on this unsupported statement is not enough for this court to decide that he was an attorney authorized to practice law in Texas.

Likewise, Harris contends that the State was required to prove that he was unauthorized to practice law in Illinois. However, Harris's assertion is based on the ambiguity of his statement to Lambert. He argues the statement could be interpreted to mean that he was authorized to practice in Illinois but that he did not say so to Lambert.

A mere assertion by Harris that he was admitted to the bar in Texas or anywhere else is insufficient to require the State to prove he was not admitted in that jurisdiction. This court is unconvinced that Harris's statement to Lambert about Texas and Illinois required the State to prove a negative. The only reason those jurisdictions were in

question is Lambert's testimony regarding his interview with Harris. As a reviewing court, we can affirm on any basis present in the record, even if it was not the basis relied upon by the trial court. See *People v. Mulvey*, 366 Ill. App. 3d 701, 711, 853 N.E.2d 68, 76 (2006). If we followed the logic proposed by Harris, he simply could have made the equally unsupported statement to Lambert that he was authorized to practice law in every jurisdiction in the United States. That would place an unreasonable burden on the State to present testimony from administrators from every jurisdiction in order to prove its case. This court will not allow Harris to support the reversal of his conviction by using the State's lack of evidence regarding his membership to the Texas or Illinois bar as proof of his authorization to practice law in those jurisdictions.

### III. Statutory Exception

■ Harris next raises the exception set out in the statute and argues that his failure to pay his attorney registration fees was unintentional. The statute's exception does not describe the offense, but rather, the exception states in a separate sentence that the statute does not apply to attorneys who unintentionally fail to pay their registration fees. If an exception within a statute merely withdraws certain acts or certain persons from the operation of the statute, the exception is a matter of defense. *People v. Rodgers*, 322 Ill. App. 3d 199, 202, 748 N.E.2d 849, 851 (2001). Where an affirmative defense is raised, the State has the burden of disproving the defense. 720 ILCS 5/3—2(b) (2006). The statute's exception therefore is a defense raised by Harris that the State had the burden of disproving.

The State established that the exception did not apply to Harris's suspended patent bar membership. The patent bar does not require annual registration fees but instead requires patent attorneys to submit a letter of intent to remain on the register pursuant to 37 C.F.R. §10.11(b) (2003). Again, Harris had the dual burden of providing the USPTO with a current address for correspondence and informing the USPTO that he wished to remain on the register. If Harris intended to remain on the register, he should have performed those duties. By failing to do so, Harris intentionally removed himself from the register of patent attorneys.

The State also proved that the exception did not apply to Harris's suspended membership in the Michigan bar. The evidence established that Harris had not regularly paid his registration fees since 1993 and that he was aware that if he did not pay his fees on time, he would be suspended. Harris's pattern of late payment and reinstatement in Michigan established that his failure to pay his registration fees was intentional and not a result of oversight.

## IV. Ineffective Assistance

■ Harris's next contention on appeal is that his counsel rendered ineffective assistance by stipulating that Harris lacked authority to practice before the USPTO. To establish the ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient in that it fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To prevail on an ineffective assistance claim, a defendant must satisfy both the performance and prejudice prongs of *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. In applying the performance prong, a defendant must overcome a strong presumption that, under the circumstances, his counsel's conduct might be considered sound trial strategy. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2066.

Harris was entitled to competent, not perfect, representation, and counsel's performance must be evaluated from counsel's perspective at the time of the representation. See *People v. Whitamore*, 241 Ill. App. 3d 519, 526, 608 N.E.2d 1304, 1310 (1993). By stipulating that Harris lacked authority to practice before the USPTO, counsel left open the opportunity to defend his client by asserting that Harris did not meet the knowledge element of the statute. Further, even if the stipulation established the State's case for Harris's culpability in falsely presenting himself as a patent attorney, his counsel still could assert that Harris either had authorization or thought he had authorization from the other jurisdictions in question. Thus, defense counsel maintained avenues to prevail at trial despite the stipulation, which can be considered sound trial strategy. We therefore conclude that counsel did not render ineffective assistance.

## V. Sufficiency of the Indictment

■ Harris next asserts that the indictment failed to sufficiently charge the offense of false personation of an attorney. To preserve an issue for appellate review, the defendant must both object at trial and present the same issue in a written posttrial motion. *People v. Coleman*, 227 Ill. 2d 426, 433, 882 N.E.2d 1025, 1029 (2008). The record does not indicate that Harris objected to the indictment during trial or in a written posttrial motion. Therefore, Harris has forfeited this issue on appeal.

Even if Harris had properly preserved this issue, the record displays the sufficiency of the indictment. The indictment stated:

"JAMES M. HARRIS committed the offense of FALSE PERSON-ATION OF AN ATTORNEY in that he, knowingly and falsely represented himself to be an attorney authorized to practice law for purposes of compensation or consideration, to wit: he rendered a legal opinion involving the permissible use of an advertising slogan to R.J. Dale Advertising and Public Relations in return for a fee of approximately $11,005.70, in violation of Chapter 720, Act 5, Section 32—5(a) of the Illinois Compiled Statutes 1992 ***."

Harris cites *People v. Peters*, 10 Ill. 2d 577, 141 N.E.2d 9 (1957), to argue that the indictment did not sufficiently charge the offense of false personation of an attorney. However, *Peters* states that "[a]s a general rule it is sufficient for an indictment *** to state the offense in the language of the statute in those cases where the statute clearly defines the offense." *Peters*, 10 Ill. 2d at 580, 141 N.E.2d at 11. Here, Harris took the position that the false personation of an attorney statute was clear and unambiguous. Because the statute clearly defines the offense and the indictment mirrors the language of the statute, the indictment is sufficient.

Moreover, when an indictment is attacked for the first time on appeal, we consider whether the suggested defect in the indictment prejudiced the defendant in preparing his defense. *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89, 91 (1991). Here, the record suggests that Harris was not prejudiced. Armed with the information from the indictment, Harris's counsel could prepare a proper defense to a charge of false personation of an attorney by arguing that Harris did not meet the elements of the statute. Therefore, even had Harris preserved this point, this court concludes that the indictment was sufficient and did not prejudice Harris at trial.

## VI. Federal Preemption

Lastly, Harris argues in his reply brief that Illinois is preempted from criminally prosecuting false representations of authority to practice before the USPTO and, therefore, the statute is without effect in this case. Harris contends that the existence of federal legislation and other provisions that regulate practice before the USPTO leaves no room for states to legislate in this area of law.

Harris's argument fails to recognize the purpose of the statute under which he was convicted. Although federal provisions exist to regulate patent attorneys, "[t]he courts of the State of Illinois have the sole and exclusive power to determine who may practice law in the State." *Lozoff*, 35 Ill. App. 3d at 700, 342 N.E.2d at 478. The State is just as capable of imposing criminal liability on those people who represent themselves as authorized to practice law before the patent bar as it is of imposing criminal liability on people who represent

themselves as authorized to practice law before any bar. Therefore, the State has the authority to prosecute Harris for falsely presenting himself as a patent attorney.

## CONCLUSION

We conclude that the State provided sufficient evidence to convict Harris of false personation of an attorney. Accordingly, we affirm Harris's conviction and sentence.

Affirmed.

NEVILLE and STEELE, JJ., concur.